**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CRAIG D. BUTLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 17 C 7860 |
| | ) | |
| **NORTHEAST ILLINOIS REGIONAL** | ) | Judge Rebecca R. Pallmeyer |
| **COMMUTER RAILROAD CORP.,** | ) | |
| *doing business as METRA,* | ) | |
| **JAMES M. DERWINSKI,** *in his individual and* | ) | |
| *official capacity as Metra Chief Mechanical* | ) | |
| *Officer*, **ART OLSEN,** *in his individual and* | ) | |
| *official capacity as Metra Director of* | ) | |
| *Milwaukee Western Avenue District* | ) | |
| *Mechanical,* and **SHON GEORGE,** *in his* | ) | |
| *individual and official capacity as Metra* | ) | |
| *Superintendent of Milwaukee Western* | ) | |
| *Avenue District Mechanical,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Craig Butler worked as an electrician for Defendant Northeast Illinois Regional Commuter Railroad Corporation ("Metra"). In August 2013, Metra terminated Butler's employment for violation of Metra's policies on attendance and employee conduct, but Butler successfully appealed his termination to the Special Board of Adjustment and was reinstated. Then in April 2016, Metra again terminated Butler's employment for attendance violations. This time, Butler's appeal failed, and he filed claims with the Illinois Department of Human Rights ("IDHR") and the U.S. Equal Employment Opportunity Commission ("EEOC"). This lawsuit, filed in October 2017, followed. Butler asserts claims for race discrimination and harassment in violation of 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; for retaliation in violation of Section 1983 and Title VII; and for disability discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*.

The court dismissed claims against individual Defendants, dismissed Butler's harassment

allegations, and dismissed certain claims as time-barred [49]. Metra moves for summary judgment on Butler's remaining claims. For the following reasons, the motion is granted.

## **BACKGROUND**

The parties have submitted competing statements of fact, as required by Local Rule 56.1. Those submissions support the following account. Butler is a 47-year-old African-American man. (Amended Mem. in Supp. of Butler Opp. to Metra Mot. for Summ. J. ("Butler Opp.") [129], 1.) He identifies as disabled because he suffers from sleep apnea, hypertension, high blood pressure, and anxiety. (*See* Metra Reply to Butler Resp. in Opp. to Metra L.R. 56.1 Stat. of Undisputed Facts ("Metra RSOF") [133] ¶ 62.)

Metra hired Butler as a journeyman electrician on November 14, 2011 and on December 19, 2011 awarded him the position of electrician in Metra's Milwaukee District Mechanical Department. (*Id.* ¶¶ 1, 3.) The terms and conditions of Butler's employment were governed by two sets of policies: (1) a collective bargaining agreement ("CBA") between Metra and the International Brotherhood of Electrical Workers, of which Butler was a member, and (2) Metra's Mechanical Department Directives, meaning internal employment policies and procedures applicable to Mechanical Department employees. (*Id.* ¶¶ 2, 4; Metra Mem. in Supp. of Mot. for Summ. J. ("Metra Mot.") [123], 2.)

On August 16, 2013, Metra terminated Butler's employment for violations of Metra's attendance and employee conduct policies. (*See* Metra RSOF ¶¶ 19-26.) Butler appealed his termination to an administrative body called the Special Board of Adjustment. (*See id.* ¶ 27.) In a ruling dated September 5, 2014, the Special Board reinstated Butler's employment effective September 26, 2014. (*Id.* ¶¶ 27-28; Special Board Award, Ex. E to Metra L.R. 56.1 Stat. of Undisputed Facts [125-5], 2; Butler Employee Personnel Record, Ex. J to Metra L.R. 56.1 Stat. of Undisputed Facts [125-10], 3.) The ruling specified that the Special Board was granting Butler "one last chance to be a safe and reliable employee . . . ." (Special Board Award 2.) Referencing this "last chance" condition, the Board further stated, "[Butler] should understand that any future

2

infractions of the Carrier's rules, could result in the permanent termination of his services." (*Id.*; *see also* Metra RSOF ¶ 30.) The last chance condition of Butler's reinstatement applied indefinitely. (*See* Metra RSOF ¶ 33.) On April 22, 2016, Metra again terminated Butler's employment, for violation of the last chance condition. (Metra RSOF ¶ 54.) After unsuccessfully appealing that decision (*id.* ¶¶ 55-56), Butler filed this lawsuit arising out of his second termination and the events leading up to it.

**A.     Metra's Progressive Discipline Policy**

Mechanical Directive No. 7 sets forth Metra's "Progressive Discipline Policy." (Metra RSOF ¶ 6.) The policy sets forth five steps that carry escalating disciplinary consequences up to and including termination, which is Step Five. (*See id.* ¶ 7.) At Step One, an employee receives a letter of reprimand; at Steps Two, Three, and Four, an employee is suspended from work for three, five, and ten days, respectively; and at Step Five, an employee is terminated. (*See id.* ¶ 7.) For violations that occur within less than two years of cumulative active service, Metra assesses discipline one step at a time. (*Id.* ¶ 11.) Each step carries a two-year probationary period, meaning that an employee starts again at Step One if he completes two years of cumulative active service without incurring additional discipline. (*Id.* ¶¶ 11-13.)[1]

For minor infractions, including absenteeism and tardiness, Metra employees receive "verbal and superintendent conferences" before they are charged with formal "steps" of discipline. (*Id.* ¶ 9; *see also id.* ¶ 38 (stating that an employee receives a verbal warning for a first occurrence, a conference with a superintendent for a second occurrence within a twelve-month period, and charges under the progressive discipline system for additional violations within a twelve-month period).) Under the CBA, an employee has a right to a hearing before Metra assesses discipline against him. (*See id.* ¶ 8.) A "discipline committee," rather than the hearing officer or witnesses, decides whether to assess discipline following a hearing. (*Id.* ¶ 10.)

---

[1]     For Step One, the probationary period is one year if the employee elects to waive a hearing. (*See id.* ¶ 13.)

Thereafter, an employee has a right under the CBA to file a grievance. (*Id.* ¶¶ 15; Aff. of Danielle Gauthier, Ex. M to Metra L.R. 56.1 Stat. of Undisputed Facts ("Gauthier Aff.") [125-13] ¶ 11.) Alternatively, the employee can appeal the decision to the Special Board of Adjustment, which is comprised of a referee and neutral member, an employee member, and a carrier (i.e., employer) member. (*See* Metra RSOF ¶ 17; Gauthier Aff. ¶ 11; Special Board Award 1; Metra Mot. 3.)

**B.    Butler's August 2013 termination and related events**

The events that led to Butler's August 2013 termination began in the first ninety days of his employment at Metra. (*See* Metra RSOF ¶ 21.) During that time, Butler violated Metra's absenteeism policies and Metra assessed Step One discipline against him. (*See id.* ¶¶ 19-21.) Butler again violated attendance-related rules on March 2, 2012, March 9, 2012, and March 15, 2012. (*Id.* ¶¶ 22-24.) After the March 2 and 9 violations, Metra assessed Step Three discipline against Butler (*see id.* ¶¶ 22-23), and after the March 15 violation, Metra assessed Step Four discipline against him. (*See id.* ¶ 24.) Approximately a year and a half later, on August 16, 2013, Metra determined that Butler had violated a rule of employee conduct by reading a newspaper after his scheduled break. (*Id.* ¶ 25.) Because Butler was in Step Four of the progressive disciplinary policy at the time, the violation resulted in termination. (*See id.* ¶¶ 25-26.) Butler denies that he violated the relevant rule of employee conduct and, as noted, successfully appealed his termination. (*See id.* ¶¶ 25-27.) The Special Board of Adjustment determined that although Metra "had met its burden of proof . . . and had proper justification for assessing discipline," "the discipline assessed for [the newspaper infraction] is excessive." (Special Board Award 2.) The Special Board reinstated Butler's employment, subject to the indefinite last chance condition referenced above. (*Id.*) The Special Board made its decision independently, but it was Metra's responsibility to enforce the terms and conditions of Butler's reinstatement, including the last chance condition. (*See* Metra RSOF ¶¶ 29, 31, 32.) It is uncontested that the last chance condition effectively put Butler on permanent Step Four status. (*See* Butler Opp. 4, 7; Metra Reply in Supp. of Summ. J. Mot. ("Metra Reply") [131], 7.)

4

## C. Butler's April 2016 termination and related events

Following his reinstatement on September 26, 2014, Butler was placed on a medical leave of absence from October 3, 2014 through March 12, 2015, for a condition(s) undisclosed in the record. (Metra RSOF ¶¶ 27, 34.) After Butler returned from leave, he violated a Metra policy that "requires an employee to provide valid documentation for an absence due to illness" when he has already used his three allotted sick days. (*See id.* ¶¶ 35-39.) Those violations were on March 27 and 30, 2015, which Metra treated as one occurrence, and April 6, 2015, which Metra treated as a second occurrence. (*See id.* ¶ 39.) Butler received a superintendent conference, rather than a disciplinary step, for those occurrences. (*See id.* ¶¶ 38-39.) One month after his return from leave, on April 14, 2015, Butler again went on a medical leave of absence, again for reasons not stated in the record. (*Id.* ¶ 40.) Butler returned to work on or about September 2, 2015. (*Id.*)

By February 23, 2016, Butler had exhausted his three allotted sick days. (*Id.* ¶ 41.) On that date, Butler "called off work and requested use of a sick day." (*Id.* ¶ 42.) Art Olsen, one of Butler's supervisors, instructed him to provide "upon his return" "medical documentation confirming he was seen by a physician on February 23, 2016 to support his absence due to illness." (Metra Mot. 4; Metra RSOF ¶ 43.) Butler did not in fact visit a physician on that date, but at some point after February 23—on a date the parties do not specify—he submitted doctor's notes dated March 2, 2016 and March 29, 2016 to support the absence. (*Id.* ¶¶ 44, 45.)[2] Olsen

---

[2] As discussed below, Metra eventually held a hearing concerning Butler's attendance violations. The parties do not provide the date the hearing began, but the court located it in the record: the hearing began on March 24, 2016. (*See* Apr. 15, 2016 Hearing Tr., Ex. T to Metra L.R. 56.1 Stat. of Undisputed Facts [125-22], 4:2-4.) Metra's Local Rule 56.1 Statement of Facts, which Butler does not dispute, suggests that Butler provided both notes before the hearing began. (*See* Metra RSOF ¶¶ 43-49; *see also* Metra Mot. 4 ("After the notice of hearing was issued, Plaintiff submitted two notes . . . dated March 2, 2016 and March 29, 2016 . . . . Plaintiff was told by Metra that the notes did not support his absence due to illness of February 23, 2016. He was given the opportunity to supplement the documentation prior to the commencement of the hearing, but failed to do so.").) Metra cannot be correct that Butler submitted both notes before the hearing began on March 24, because the doctor did not write the second note until March 29. Accordingly, the court assumes that Butler submitted the first note sometime after February 23 but before the hearing began on March 24, and submitted the second note on or after March 29.

informed Butler that because the note dated March 2, 2016 did not reflect a doctor's visit on the date of the absence, it did not satisfy Metra's "valid documentation" requirement. (*Id.* ¶¶ 46, 48.)[3] "Valid documentation," Metra policy provides, is "anything that would justify an employee's absence on a particular day that was missed." (*Id.* ¶ 37.)[4] Metra issued Butler a notice of hearing concerning the February 23, 2016 absence and afforded him "additional time to submit valid documentation" before the hearing. (*Id.* ¶¶ 47, 49.) The hearing commenced on March 24, 2016. (Apr. 15, 2016 Hearing Tr. 4:2-4.) During the hearing, Butler requested a recess to retrieve supplemental documentation. (*See id.* ¶ 50.) As Butler was crossing a street during the recess, he fell and injured his knee. (*Id.* ¶ 50; *see* Ex. C to Am. Compl. ("Attachments to EEOC Complaint") [37-1], 1.) Metra postponed the completion of the hearing as a result of the injury. (*See* Metra RSOF ¶ 51.)

At some point before the hearing reconvened, Butler submitted the second doctor's note dated March 29, 2016. In that note, Butler's doctor wrote that Butler visited his office on March 29 and had been under his care since March 21, 2012. (Doctor's Notes, 2.) The rest of the note is illegible. (*See id.*) Olsen testified during his deposition that this note did not constitute valid

---

[3] Again, although Metra's RSOF indicates that Olsen made this determination for both doctor's notes simultaneously, the chronology of events establishes that he initially made that determination only for the note dated March 2.

[4] Metra does not explain in its briefing or its Local Rule 56.1 statement why the doctor's note did not satisfy this broad definition merely because it failed to establish that Butler had visited a doctor on the date of his absence (February 23, 2016). But the court notes that during his deposition, Olsen testified that in the March 2 note, Butler's doctor wrote that Butler "was able to return to work on 2/24/2016." (Olsen Deposition, Ex. N2 to Metra L.R. 56.1 Stat. of Undisputed Facts [125-16] ("Olsen Dep."), 41:16-19; *see* Doctor's Notes, Ex. I to Metra L.R. 56.1 Stat. of Undisputed Facts [125-9], 1).) Yet according to Olsen, Butler did not return to work on February 24. (Olsen Dep. 41:18-19.) Although neither party has remarked on this, Olsen's testimony confirmed that this issue influenced his determination that the note did not justify Butler's absence. (*Id.* at 41:16-19.) Butler, for his part, argues that Olsen lacked the authority to make that determination, and that only Metra's medical director, Molly Blechl, could determine the sufficiency of medical documentation. (Butler Resp. in Opp. to Metra L.R. 56.1 Stat. of Undisputed Facts ("Butler RSOF") [126] ¶ 48.)

documentation for Butler's February 23, 2016 absence not only because it failed to show that Butler visited a doctor on February 23, but also because it was "too vague." (Olsen Dep. 50:18-24; Metra RSOF ¶ 48 (citing same).)

Metra reconvened Butler's hearing on April 15, 2016. (Metra RSOF ¶ 51.) Butler provided no additional medical documentation to support his February 23, 2016 absence. (*Id.* ¶ 52.) Accordingly, on April 22, 2016, Metra disciplined Butler for violating the absenteeism policy. (*Id.* ¶ 53.) Because the violation was Butler's third within a twelve-month period, the discipline took the form of a step (*see id.* ¶ 38) and violated the last chance condition of Butler's reinstatement. (*Id.* ¶ 54.) Metra, therefore, terminated his employment; the record does not reveal which Metra official made this decision. (*Id.* ¶¶ 54, 56.) Butler appealed the termination directly to the Special Board of Adjustment, and the Special Board affirmed Metra's decision. (*Id.* ¶¶ 55-56.) As detailed below, Butler does not dispute that the basis for his termination was the violation of Metra's absenteeism policy, which itself violated the last chance condition of reinstatement. Rather, Butler alleges that Metra imposed unduly harsh discipline for the violation because of Butler's race and disability, and in retaliation for Butler's filing of an EEOC complaint against Metra in 2013.

On July 15, 2016, Butler filed a complaint against Metra with the IDHR and the EEOC. (Metra RSOF ¶ 59; Ex. B to Am. Compl. ("July 2016 EEOC Complaint") [37-1].) Butler alleged that Olsen required him to provide doctor's notes for the February 23, 2016 absence, and then determined that the notes were inadequate, because of his race and disabilities, and because Butler had filed an EEOC complaint against Metra in 2013. (*See* Attachments to July 2016 EEOC Complaint.) Butler also alleged that Metra subjected him to the last chance condition of employment indefinitely, and applied that condition when he violated the absenteeism policy in 2016, for the same reasons. (*See id.*) On August 2, 2017, Butler received notice of his right to sue Metra in connection with the July 2016 EEOC complaint. (*See* Ex. A to Am. Compl. ("Right

7

to Sue Letter") [37-1]).)[5]  Butler filed this lawsuit on October 31, 2017.

**DISCUSSION**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of demonstrating the absence of genuine issues of material fact." *LaRiviere v. Bd. of Trs. of S. Ill. Univ.*, 926 F.3d 356, 359 (7th Cir. 2019). If the movant meets its burden, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted). On a motion for summary judgment, the court construes all facts and draws all reasonable inferences in favor of the nonmoving party. *See Mollet v. City of Greenfield*, 926 F.3d 894, 896 (7th Cir. 2019).

**A.    Preclusion under the Railway Labor Act**

Metra argues, first, that Butler's claims are governed by the CBA and are therefore precluded under the Railway Labor Act, 45 U.S.C. § 151 *et seq.* The RLA requires parties to resolve "minor disputes" in arbitration rather than in court. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 831 (7th Cir. 2014). "Minor disputes are those 'growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.'" *Id.* at 831 (quoting 45 U.S.C. § 153). Minor disputes can be "conclusively resolved" by interpreting a CBA. *Id.* at 832. By contrast, the RLA generally "does not require arbitration of claims asserting rights established by state or federal law independent of a collective bargaining agreement." *Id.* at 833. For example, claims that an employer rejected an employee's reinstatement application "because of her sex and in retaliation for protected activity" are independent of a CBA. *Id.* This is because such claims "depend on a 'factual inquiry into any retaliatory [or discriminatory] motive of the employer' rather than on an interpretation of the [CBA]." *Id.* (quoting *Hawaiian Airlines, Inc.*

---

[5]    Metra states that Butler's July 2016 EEOC charge "was dismissed on August 21, 2014 for lack of evidence." (Metra RSOF ¶ 59.) But the EEOC could not dismiss a complaint it had not yet received, so the court assumes Metra is referring to Butler's 2013 EEOC complaint.

*v. Norris*, 512 U.S. 246, 266 (1994)).

According to Metra, Butler's claims are "minor disputes" about (1) the disciplinary process provided to him under the CBA and (2) the "interpretation, application and implementation" of the last chance condition of his reinstatement. (Metra Mot. 15.) Metra also emphasizes that the last chance condition was an "independent and binding decision" of the Special Board of Adjustment and that Butler appealed his April 2016 termination directly to the Board. (*Id.*) The court assumes that an appeal to the Special Board of Adjustment constitutes the arbitration called for in the RLA. (*See* Metra RSOF ¶ 16 (stating that the RLA "requires dispute adjudication through a final and binding arbitration between the carrier representative, the union representative, and a third-party neutral that acts as the board chairman"); Butler RSOF ¶ 16 ("disputing" this statement only in the sense that the RLA has additional requirements concerning arbitration).) The court does not agree with Metra that the RLA precludes Butler's claims. Although Butler argues that the last chance condition was impermissible under the CBA (*see* Butler Opp. 9-11)—as well as inconsistent with the Special Board Award and Metra disciplinary policies (*see id.*)—Butler's claims depend on allegations that Metra enforced the last chance condition because of Butler's race, disability, and 2013 EEOC complaint. These claims can be resolved only through a factual inquiry into Metra's discriminatory or retaliatory motive, if any. *See Carlson*, 758 F.3d at 833. Butler's claims, therefore, are not precluded.

**B.      Race discrimination in violation of Title VII**

Citing an excerpt of Butler's deposition testimony, Metra contends that Butler's claims for race discrimination under Title VII are based on just two allegations. (*See* Metra RSOF ¶ 58; Metra Mot. 11.) The first is that Metra "never issued [Butler] standard tools to do [his] job effectively in a timely manner like all the other journeym[en] who are non-Black. . . ." (Butler Deposition, Ex. B to Metra Mot. ("Butler Dep.") [125-2], at 38:8-13; Metra RSOF ¶ 58.) The second is that in assessing discipline against him in March 2012 for absences, Metra improperly treated consecutive absences as more than one occurrence. (*See* Butler Dep. at 38:19-39:9;

Metra RSOF ¶ 58.)[6]  Metra argues that Butler did not file an EEOC charge within 300 days of these occurrences and that his Title VII claim is therefore time-barred.  (*See* Metra Mot. 11; *see also, e.g.*, *Swanson v. Vill. of Flossmoor*, 794 F.3d 820, 825 (7th Cir. 2015) ("[T]o bring a Title VII claim . . . a plaintiff must file a complaint with the EEOC within 300 days of experiencing the complained-of discrimination.")).  Butler does not dispute this fact.  Accordingly, the court grants Metra's motion for summary judgment on this portion of Butler's Title VII race discrimination claim.[7]

The court's analysis is not finished, however.  A fair reading of Butler's complaint and his summary judgment briefing indicates that his claim is also based on other allegations.  Namely, Butler alleges that Metra required him to justify his February 23, 2016 absence with a doctor's note reflecting a doctor's visit on that date—but did not require the same of similarly situated, non-African-American employees.  (*See, e.g.*, Attachments to July 2016 EEOC complaint at I.)  Butler also alleges that Metra applied the last chance condition of reinstatement against Butler but not against similarly situated, non-African-American employees.  (*See, e.g.*, *id.* at V; Butler Opp. 10 (arguing that the condition was "tailor-made for" Butler).)  These actions, Butler alleges, led to his unlawful termination in April 2016.

The Seventh Circuit "recently discarded the distinction between direct and indirect methods of proof in employment discrimination cases, and clarified that all evidence must be evaluated as a whole."  *Lauth v. Covance, Inc.*, 863 F.3d 708, 715 (7th Cir. 2017) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765-66 (7th Cir. 2016)).  "Thus, the proper inquiry . . . is

---

[6]  In its motion, Metra refers to discipline imposed in March 2015 (*see* Metra Mot. 11), but Metra's accompanying filings show that the events in question were in 2012.  (*See, e.g.*, Metra RSOF ¶¶ 22-24, 58 (referencing absences in March 2012); Butler Dep. 38:18-39:9 (testifying that he was absent from work because he was incarcerated); Butler RSOF ¶ 8 (stating that Butler was incarcerated in 2012).)

[7]  A race discrimination claim can also be brought under 42 U.S.C. § 1981, which has a four-year statute of limitations.  *See, e.g.*, *Riley v. Elkhart Cmty. Schs.*, 829 F.3d 886, 891 (7th Cir. 2016).  As neither side has addressed this, the court also declines to do so.

whether a reasonable jury could determine, based on all of the record evidence," that a protected characteristic "was the cause of [plaintiff's] termination." *Lauth*, 863 F.3d at 715; *see LaRiviere*, 926 F.3d at 359 (in race discrimination suits under Title VII, the question a court "seek[s] to answer is [w]hether a reasonable juror could conclude that [the plaintiff] would have kept h[is] job if [he] had a different ethnicity, and everything else had remained the same" (internal quotation marks omitted)). In evaluating the evidence, "courts may draw upon the familiar *McDonnell Douglas* burden-shifting framework to determine if triable issues exist." *LaRiviere*, 926 F.3d at 359-60 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) (stating that the *McDonnell Douglas* approach is "a common, but not exclusive, method of establishing a triable issue of intentional discrimination" in Title VII litigation (internal quotation marks omitted)). Both Metra and Butler have relied on the *McDonnell Douglas* framework, so the court refers here to that framework as well.

Under the *McDonnell Douglas* approach, Butler "has the initial burden of establishing a *prima facie* case of discrimination . . . [by] showing that (1) [he] is a member of a protected class, (2) [his] job performance met [the employer's] legitimate expectations, (3) [he] suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." *LaRiviere*, 926 F.3d at 360 (internal quotation marks omitted). Butler argues that he has established a *prima facie* case because he is African-American and suffered an adverse employment action. (Butler Opp. 8.)

More problematic for Butler are the requirements that he establish satisfactory job performance and more favorable treatment of other workers. Butler does not dispute that Metra terminated him in April 2016 because he violated the last chance condition of his reinstatement, by violating Metra's absenteeism policies on three occasions within a twelve-month period. Butler appears to argue that he was nonetheless performing his job duties satisfactorily because he either complied with, or thought he was complying with, Metra's absenteeism policies. For example, Butler contends that he should have been allocated more sick days; he "believed he

[still] had available sick time" on the relevant occasions; he was "surprised" to learn that the last chance condition was still in effect in 2016; Olsen initially informed him "that he did not need a doctor's note" to support his February 23, 2016 absence; and the Metra medical director should have, but did not, review the doctor's notes Butler submitted at some time after the February 23 absence. (Butler Opp. 4-5, 11.) In support of these arguments, Butler has either cited no portion of the record at all, or to entire depositions and hearing transcripts without page numbers. (*See id.*; *see also, e.g.*, Butler RSOF ¶¶ 8, 48.) These inadequately-supported assertions do not create a dispute of fact about Butler's satisfactory performance. *See, e.g.*, *Boss v. Castro*, 816 F.3d 910, 914 (7th Cir. 2016) (Local Rule 56.1 requires, among other things, "specific cites to the record," and the district court can demand "strict compliance" with the rule); *Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710-11 (7th Cir. 2015) (citations "to depositions without identifying the corresponding deponent or the specific page number(s) on which the asserted fact can be found" are "wholly inadequate" for purposes of L.R. 56.1).

Butler also suggests that his job performance was satisfactory because Metra did not prove the contrary. To this end, Butler maintains that the April 2016 hearing was unfair because Metra's medical director was not present; Olsen improperly served as "both the charging party" and Metra's witness at the hearing; and Metra should have continued the hearing for a second time until Butler was no longer "under his doctor's care." (Butler Opp. 4-6.) Even construed generously, these arguments do not address satisfactory job performance. They instead appear to be challenges to the fairness of the hearing procedure. And again, Butler has not supported these arguments with proper cites to the record, so the court disregards them. *See Boss*, 816 F.3d at 914; *Friend*, 789 F.3d at 710-11. What remains is undisputed evidence that Butler violated Metra's absenteeism policies three times within a twelve-month period even before the incident on February 23, 2016. The record also contains the Special Board's determination in September 2014 that Metra "had met its burden of proof . . . and had proper justification for assessing discipline" for earlier violations. (Special Board Award 2.) Butler has not presented evidence that

his job performance satisfied Metra's legitimate expectations.  *See LaRiviere*, 926 F.3d at 360.

Nor has Butler presented evidence from which a jury could find that Metra enforced the absenteeism policy less strictly against non-African-American employees.  *See id.*  As previously mentioned, Butler contends that neither the CBA nor Metra's policies permit an indefinite last chance condition of reinstatement.  (*See, e.g.*, Butler Opp. 7, 9-11.)  Butler appears to argue that Metra imposed this unauthorized condition because he is African-American. But it is not clear to the court that the last chance condition of reinstatement violated CBA or Metra policies in the first place.  Butler notes that the CBA requires, when the Special Board determines that Metra imposed excessive discipline on an employee, that "the record shall be cleared or the discipline reduced or modified."  (*Id.* at 9 (quoting CBA Rule 29(h)).)  Indeed, the Special Board determined that termination was overly harsh discipline for Butler's allegedly reading a newspaper during his shift. By imposing the indefinite, last chance condition of employment, Butler asserts, the Special Board failed to "reduc[e] or modif[y]" Butler's discipline.  (Butler Opp. 9-10.)  To the contrary:  Metra had originally terminated Butler; by reinstating Butler's employment, even under an indefinite last chance condition, the Board explicitly reduced his penalty.  There was no violation of CBA Rule 29(h).  Butler also admits that the Special Board set the terms of his reinstatement through an appeal process for which Metra and CBA policies provide.  (Metra RSOF ¶¶ 15-16, 31-32.)

More importantly, Butler has offered no evidence that Metra treated any similarly situated, non-African American employees differently with regard to a last chance condition of reinstatement.  Metra, for its part, states that the Special Board reinstated a different Metra employee ("L.W.") on a last chance condition of employment.  (*Id.* ¶ 67.)  As with Butler's last chance condition, the Special Board did not put an expiration date on L.W.'s last chance condition. (*See* Exhibits to Gauthier Decl. [125-14], 5.)  Although Metra does not specify L.W.'s race (*see id.*; Metra RSOF ¶ 67), Metra does state that it ultimately terminated L.W. when he or she violated the condition.  (Metra RSOF ¶ 68.)  This evidence rebuts any claim that the indefinite last chance condition of Butler's employment violated CBA or Metra policies, or that Metra applied the

condition to Butler because of his race.

Butler also appears to contend that, if he had not been African-American, he would have received a step lower than five for his violation of the absenteeism policy in February 2016. Such an argument could have traction if Butler could show that other workers were not held to the "Step Five" standard under circumstances like these—that is, if Butler offered evidence that Metra treated "another similarly situated individual who was not in the protected class . . . more favorably." *LaRiviere*, 926 F.3d at 360. During fact discovery, Butler did not identify any such individual. In response to Metra's Local Rule 56.1 Statement of Undisputed Facts, Butler states that he now remembers relevant information: specifically, Butler's former union representative once told him that a now-retired Metra employee "took between 10 and 15 days' consecutive unscheduled leave without incurring [d]isciplinary steps." (Butler RSOF ¶ 69.) Butler cites nothing in the record to support this contention (which is hearsay in any event), nor does he identify the purportedly favored employee's race. And assuming the union representative's account is accurate, the court notes that it may be that the employee did not incur disciplinary steps because he complied with Metra's absenteeism policies when he took the unscheduled leave. Butler's only other proffered support for his claim is the assertion, unmoored to additional evidence, that other African-American employees at Metra "are raising similar claims of racial bias . . . ." (Butler Opp. 8.) Butler has not disclosed the nature of these other claims, when and by whom they were made, or how they relate to Butler's own claim of disparate treatment

Metra, for its part, has submitted evidence that it did in fact discipline a non-African-American employee "for failure to provide valid documentation in support of his absence due to illness." (Metra RSOF ¶ 65; Gauthier Aff. ¶ 23).) Butler does not dispute this evidence. (*See* Butler RSOF ¶ 65.) Metra further contends that it terminated this other employee because at the time of the infraction, he was at Step Four of the progressive disciplinary policy. (Metra RSOF ¶ 66; Gauthier Aff. ¶ 23.) Butler does dispute this point; he merely contends that Metra provides insufficient information to support it. (*See* Butler RSOF ¶ 66.) Butler's "equivocation,"

14

however, is "an admission, not a denial." *Karazanos v. Madison Two Assocs.*, 147 F.3d 624, 626 (7th Cir. 1998); L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *see also, e.g.*, *Ace Hardware Corp. v. Marn, Inc.*, No. 06-CV-5335, 2008 WL 4286975, at *2 n.7 (N.D. Ill. Sept. 16, 2008) ("[A] party may not, at the summary judgment stage, rely on statements that it does not have sufficient information to respond to a statement of fact." (citing, *inter alia*, *Karazanos*, 147 F.3d at 626)). Butler has not offered evidence that any person outside the protected class was treated more favorably under similar circumstances.

Considering the record as a whole, no reasonable juror could find that Butler's race was the cause of the adverse employment actions Metra took against him. *LaRiviere*, 926 F.3d at 359; *Lauth*, 863 F.3d at 715. The court, therefore, grants Metra's motion for summary judgment on Butler's Title VII race discrimination claim.

### C. Race discrimination in violation of Section 1983

"[T]he same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection." *Radentz v. Marion Cnty.*, 640 F.3d 754, 757 (7th Cir. 2011); *see also, e.g.*, *Barrett v. Ill. Cmty. Coll. Dist. No. 515*, No. 15 CV 2334, 2019 WL 3554109, at *6 (N.D. Ill. Aug. 5, 2019) (same). Butler's Section 1983 claim based on race discrimination fails for the same reasons as his Title VII claim, and the court grants Metra's motion for summary judgment on that claim, as well.

### D. Retaliation in violation of Title VII

Butler's retaliation claim—that Metra took adverse employment actions against him in retaliation for his filing of the 2013 EEOC complaint—fails for similar reasons.[8] (*See* Am.

---

[8] Metra contends that Butler "also attributes his retaliation claim to his complaint of discrimination filed on July 15, 2016, which he contends led to his April 22, 2016 termination." (Metra Mot. 9.) In support of that argument, however, Metra cites its Local Rule 56.1 statement—which states that Butler's retaliation claim is based on his *2013* EEOC complaint. (*See id.* (citing Metra RSOF ¶ 60).) Accordingly, and because a retaliation claim concerning the 2016 EEOC

15

Compl. [37] ¶¶ 62-65; Metra RSOF ¶ 60; Butler Dep. 74:12-75:24; Attachments to July 2016 EEOC complaint at II, VI (alleging, *inter alia*, that when Metra required Butler to provide a doctor's note to support his February 23, 2016 absence, refused to accept the doctor's notes he submitted, and terminated him in April 2016, it acted with a retaliatory motive).) "Title VII prohibits employers from retaliating against employees for complaining about discrimination." *Mollet*, 926 F.3d at 896 (citing 42 U.S.C. § 2000e-3(a)). "To establish a *prima facie* case of retaliation under Title VII, [Butler] must show: (1) he engaged in a statutorily protected activity, (2) his employer took a materially adverse action against him, and (3) there is a causal link between the protected activity and the adverse action." *Id.* "To prove causation, the plaintiff must show that the desire to retaliate was the but-for cause of the challenged employment action," meaning that it "would not have occurred in the absence of the alleged" protected activity. *Robinson v. Perales*, 894 F.3d 818, 830 (7th Cir. 2018) (internal quotation marks omitted); *see also Mollet*, 926 F.3d at 897 (holding that a plaintiff must show that "the protected activity was *the* but-for cause of the adverse action," not merely "*a* but for cause"). "As with . . . discrimination claim[s]," the Seventh Circuit "no longer recognize[s] a distinction between direct or indirect evidence, and instead consider[s] all of the record evidence to determine whether a causal link exists." *Lauth*, 863 F.3d at 716 (citing *Ortiz*, 834 F.3d at 765-66)).

Metra does not dispute that Butler's filing of the 2013 EEOC complaint was a statutorily protected activity, nor that the April 2016 termination was an adverse employment action. Rather, it contends that Butler has offered no evidence to support a finding that the protected activity and the adverse employment action(s) were causally linked. (*See* Metra Mot. 9, 12; Metra Reply 6.) Butler responds by pointing to incidents that he alleges were retaliatory, including accusations by Olsen in 2013 that Butler was not completing work assignments; Metra's termination of Butler's

---

complaint makes no sense in light of the timing, the court assumes Metra made this argument in error, and meant to refer to the 2013 EEOC complaint.

employment in 2013 on the ground that Butler was reading a newspaper during his shift; Metra's disciplinary actions against Butler in 2016, including requiring him to submit doctor's notes to support his February 23 absence; and Metra's enforcement of the last chance condition of Butler's reinstatement. (*See* Butler Opp. 3-5.) To the extent Butler's retaliation claim is based on the 2013 incidents just mentioned, it is time-barred. Butler was required to file an EEOC complaint about those incidents within 300 days of their occurrence, *see Swanson*, 794 F.3d at 825, but he waited far longer (until July 2016).

In any event, Butler presents no evidence of a causal link between his filing of the 2013 EEOC complaint and these incidents (both those that occurred in 2013 and those that occurred in 2016). Butler contends that he has established a viable retaliation claim merely because the incidents occurred after he filed the 2013 EEOC complaint. (*See* Butler Opp. 8.) But only in "rare case[s]" will "suspicious timing, without more, . . . carry the day." *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008). In *Argyropoulos*, the Seventh Circuit held that an interval as short as seven weeks between the protected activity and the adverse employment action was too long to infer a causal connection between the two. *See id.*; *see also LaRiviere*, 926 F.3d at 360-61 (ten-month interval was "too long to suggest a causal nexus without additional evidence"). The 2016 incidents occurred years after Butler filed the 2013 EEOC complaint. He offers no other evidence to support his claim that any of the alleged adverse employment actions were retaliatory, let alone that his "protected activity was *the* but-for cause of" those actions. *See Mollet*, 926 F.3d at 897.

Nor has Butler identified a triable issue of fact under the *McDonnell Douglas* framework—on which both parties rely, and which remains a viable means for assessing Title VII retaliation claims. *See Lewis v. Wilkie*, 909 F.3d 858, 867 (7th Cir. 2018) ("Nothing in *Ortiz* . . . displaced the burden-shifting analysis established in *McDonnell Douglas*" (internal quotation marks omitted)). Butler has not offered evidence that Metra treated him less favorably than similarly situated employees who did not file EEOC complaints. For this reason alone, Butler cannot

17

establish a *prima facie* case of retaliation. *See Lewis*, 909 F.3d at 866. The court grants Metra's motion for summary judgment on Butler's Title VII retaliation claim.

E.  **Retaliation in violation of Section 1983**

Butler also claims that Metra retaliated against him in violation of 42 U.S.C. § 1983 for his filing of the 2013 EEOC complaint. (*See* Am. Compl. ¶¶ 62-65.) The court construes this as a First Amendment retaliation claim. To prevail on such a claim, "a public employee must show that (1) [he] engaged in constitutionally protected speech; (2) [he] suffered a deprivation because of [his] employer's action; and (3) [his] protected speech was a but-for cause of the employer's action." *Milliman v. Cnty. of McHenry*, 893 F.3d 422, 430 (7th Cir. 2018); *see also, e.g.*, *Volkman v. Ryker*, 736 F.3d 1084, 1089 (7th Cir. 2013) (similar). Even assuming for the sake of argument that Butler's EEOC complaint is constitutionally protected speech,[9] Butler cannot survive summary judgment on this claim, either. Butler's Section 1983 retaliation claim is based on the same allegations as his Title VII retaliation claim. (*See* Am. Compl. ¶¶ 62-65; Metra RSOF ¶ 60; Butler Dep. 74:12-75:24; Attachments to July 2016 EEOC complaint at II, VI.) As discussed earlier, no reasonable jury could find that Butler's filing of the 2013 EEOC complaint was "a but-for" cause of the adverse employment actions that Metra allegedly took against Butler in 2013 and 2016. *Milliman*, 893 F.3d at 430. Accordingly, the court grants Metra's motion for summary judgment on this claim.

F.  **Disability discrimination in violation of the ADA**

Finally, Butler alleges that Metra discriminated against him for his disabilities in violation of the ADA, including by enforcing the last chance condition of his reinstatement, requiring him to

---

[9] The 2013 EEOC complaint was likely not constitutionally protected speech. *See, e.g.*, *Bivens v. Trent*, 591 F.3d 555, 561-62 (7th Cir. 2010) (police officer's union grievance "filed for the sole purposes of securing his own medical treatment and ensuring he had a safe working environment" was "a matter of purely private interest" and was therefore not constitutionally protected speech); *Wilhelm v. City of Calumet City,* 409 F. Supp. 2d 991, 998 (N.D. Ill. 2006) (where "[p]laintiff's EEOC charges address[ed] the alleged discrimination in purely personal terms," they were "not speech on a matter of public concern"). Because Butler has not identified disputed factual issues concerning causation, however, the court need not resolve this issue.

provide a doctor's note to support his February 23, 2016 absence, rejecting the doctor's notes he provided, and terminating him in April 2016. (*See* Am. Compl. ¶¶ 66-70; Attachments to July 2016 EEOC Complaint at III, IV, VII, VIII; Butler Opp. 8, 10.) Butler argues in his opposition that Metra did not accommodate his disabilities by assigning him to a desired shift, but he offers no factual support for this contention, and did not assert a failure to accommodate claim in his Amended Complaint at all. (*See* Butler Opp. 2.) Accordingly, the court construes Butler's claim as one for disparate treatment based on a disability under the ADA. To survive summary judgment on this claim, Butler must prove that (1) he was disabled, (2) he was qualified to perform essential functions with or without reasonable accommodation, and (3) his disability was the "but for" cause of adverse employment action. *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019).

As Metra argues, the record does not establish a triable issue on any of these factors. First, according to Metra, Butler has not shown that he suffers from a disability within the meaning of the ADA. (*See* Metra Mot. 10.) Second, Metra contends that Butler has not offered evidence that he can perform the essential functions of his job. (*See id.*) To the contrary, Metra argues, the record shows that Butler missed work on numerous occasions, beginning in his first year of employment, and failed to follow Metra's absenteeism policies on those occasions. Metra points out that "regular attendance" can be considered "an essential job requirement" and argues that the undisputed evidence in the record shows that Butler could not perform it. (*See id.* at 10 (quoting *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) ("An employer is generally permitted to treat regular attendance as an essential job requirement . . . .").) Finally, Metra maintains that "the record is entirely devoid of any evidence" from which a reasonable jury could conclude that it terminated Butler because of his disability. (Metra Mot. 11.) Butler provides only two responses. First, he states that Metra knew about his disabilities because it granted his requests for leave under the Family and Medical Leave Act. (*See* Butler Opp. 2; *see also id.* (stating that he included doctor's notes with his requests for leave).) Second, he argues that other African-American employees at Metra "are raising similar claims of . . . the infliction of excessive

discipline on employees . . . with disabilities." (*Id.* 8.) These arguments do not identify disputed factual issues on the points Metra has raised. The court agrees with Metra that, based on the undisputed facts in the record, no reasonable jury could find that Butler is disabled within the meaning of the ADA; "was qualified to perform essential functions with or without reasonable accommodation"; and suffered adverse employment actions because of his disability. *Scheidler*, 914 F.3d at 541. The court, therefore grants Metra's motion for summary judgment on Butler's ADA claim.

## **CONCLUSION**

For the foregoing reasons, the court grants defendant Metra's motion for summary judgment [122].

ENTER:

Dated: September 27, 2019

_____
REBECCA R. PALLMEYER
United States District Judge